**William Redin ARMSTRONG,**
**Petitioner**

v.

**FEDERAL AVIATION ADMINISTRA-TION and Robert A. Sturgell, Acting Administrator, Federal Aviation Administration, Respondents.**

**No. 07–1463.**

United States Court of Appeals, District of Columbia Circuit.

Oct. 1, 2008.

Richard E. Gardiner, Law Office of Richard E. Gardiner, Fairfax, VA, for Petitioner.

Before: RANDOLPH, ROGERS and TATEL, Circuit Judges.

### *JUDGMENT*

This case was considered on the record from the National Transportation Safety Board and on the briefs filed by the parties pursuant to D.C. CIR. Rule 34(j). It is

ORDERED AND ADJUDGED that the petition is denied.

The genesis of this case is Armstrong's January 27, 2006 "gear-up landing" of his Mooney M20J propeller plane at Eagle's Nest Airport in Waynesboro, Virginia. During this landing, Armstrong's plane sustained scrape damage to the belly panels, landing gear doors, and other components, and its propeller struck the ground and sustained damage. Two FAA inspectors examined the aircraft and found it unairworthy. The FAA revoked Armstrong's license for flying the plane on two unauthorized flights after this incident without complying with airworthiness directive AD 2004–10–14, and for several related maintenance violations. The National Transportation Safety Board upheld the license revocation, and Armstrong petitions for review.

Armstrong argues that we should review findings of knowledge and constructive knowledge de novo. In fact, we review the Board's decision for substantial evidence. *See, e.g., Fabi Constr. Co. v. Sec'y of Labor,* 508 F.3d 1077, 1083–84 (D.C.Cir.2007) (applying substantial evidence review to agency determination that petitioners knew or should have known that their conduct violated industry practice). Armstrong admits to twice flying the aircraft while it was unairworthy, but maintains that a work order invoice and a stamped boilerplate maintenance release on a sticker, provided to him at a time when the aircraft was visibly missing parts, reasonably convinced him that the plane was airworthy. Substantial evidence supports the Board's contrary conclusion, as well as its determinations that Armstrong committed five maintenance-related violations when he attached electronics to his airplane without a mechanic's certificate and attached landing gear doors backwards, and that he committed a residual violation based upon the previous violations.

Armstrong also argues that the Board violated his First Amendment rights by using his criticism of AD 2004–10–14 as evidence supporting its conclusion that his violation was intentional. If accepted, this claim would have far-reaching implications not merely for agency actions but for all judicial proceedings in which statements are considered as evidence. *See, e.g., Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249, 1260 (7th Cir.1993) ("[T]he gist of STA's argument seems to be that inflammatory speech, such as racial slurs, because protected by the first amendment, can never serve as evidence of racial animus. Taking STA's argument to its logical conclusion, the statement 'I'm refusing to hire you because you are black and I think all blacks are inferior' would not be admissible evidence of discriminatory hiring. This is patent nonsense. While the first amendment in fact does preserve the right to speak offensively, it does not provide a shield against the logical import of that speech."). The Board did not violate Armstrong's First Amendment rights by using his speech as evidence of his intent to violate the FAA's regulations, nor was its sanction otherwise arbitrary, capricious, or not in accordance with law.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. Rule 41.